HARRIS, Presiding Judge.
Appellant was put to trial upon an indictment which, omitting the formal parts, reads as follows:
“The Grand Jury of said County charge that before the finding of this indictment Jake M. Dial, whose name is otherwise unknown to the grand jury, did after September 16, 1971, unlawfully possess, sell, furnish or give away to-wit: Marijuana, a controlled substance, against the peace and dignity of the State of Alabama.”
Throughout the trial proceedings appellant was represented by counsel of his choice and at arraignment pleaded not guilty. The jury returned a verdict finding him guilty as charged in the indictment and fixed his fine at ten thousand dollars. As additional punishment the trial judge sentenced appellant to ten years imprisonment in the penitentiary. In open court appellant gave notice of appeal. Appellant is represented by new counsel on this appeal.
Prior to trial appellant filed the following motions: (1) motion for discovery and inspection; (2) change of venue; (3) demurrer or motion to dismiss the indictment, and motion for continuance. The court denied the motion to dismiss the indictment, and denied the motion for a continuance after a hearing. The court granted the motion for discovery and ordered the District Attorney to permit defense counsel to withdraw a sample of the marijuana for testing. The court also directed the District Attorney to encourage all State’s witnesses to talk with the defense counsel.
Seven witnesses actually testified at the hearing on the motion for change of venue and expressed the opinion that, based upon pretrial publicity by newspaper accounts, television broadcasts, radio reports, and discussions in the county, appellant could not receive a fair and impartial trial in Sumter County, or that it would be very difficult for him to receive such a trial. It was stipulated that eight additional witnesses would testify in like manner. The court expressly reserved ruling on the motion for change of venue until a voir dire examination of the jury venire was conducted.
After the jury was sworn and qualified the voir dire examination began. Several of the veniremen testified they had heard the case discussed and had heard and read the news accounts, including television and radio reports, but said they could disregard what they had heard and read and render a fair and impartial verdict. Some veniremen had not read the newspaper accounts or heard the case mentioned on television or radio. Not a single juror stated that he or she was biased and prejudiced by what he or she had heard or read. The trial court then overruled the motion for change of venue.
Appellant did not testify nor did he offer any evidence in his behalf concerning the merits of the State’s case. The case presented by the State was undisputed.
On September 9, 1978, the Sheriff of Sumter County, Melvin Stephens, accompanied several narcotics agents and the investigator from the District Attorney’s Office *874 for the purpose of burning a field of growing marijuana. The Sheriff testified that this particular field was in Sumter County and was located in a pasture about a mile to a mile and a half from County Road 74. The field was three and a half to four acres in size. The field was planted in rows with plants that were seven to eight feet tall. About an acre and a half of the field had been previously harvested. The remaining acreage was destroyed by burning the plants after they were pulled up and stacked. According to the Sheriff this land belonged to appellant.
After burning the marijuana the Sheriff saw appellant at his horse barn which was located about two miles from this field of marijuana. The horse barn was off Highway 74 on a dirt road to the left before you get to appellant’s residence. The Sheriff, Lieutenant Bradford and Chief Moody had a conversation with appellant in which they told him they had just burned a marijuana field on his place and they had reason to believe he had some more marijuana, and, if he did, it was time to show it to them. Appellant told the officers he didn’t know anything about it and the Sheriff did not ask him any more questions.
Later that night the Sheriff and Deputy Walton went back on Highway 74 near appellant’s house. The Sheriff called appellant’s home and learned that he was not there. They then went to the home of Edward Morris (a co-defendant) and learned that he had gone with appellant to do some work. The time was about 10:30 p. m. The Sheriff knew that appellant had an interest in the Cobb house located in the area. They drove to the old Cobb place and parked behind an abandoned store. Just before they parked they heard a noise and crawled up behind the house and from this vantage point they saw a truck. They moved closer and observed two people loading something on the truck in large paper bags. The officers got within fifty feet of the truck which the Sheriff described as a “brown Chevrolet truck, flat bed; the bed was approximately eight foot long and six foot wide, with a clearance light, a yellow clearance light on top of the cab.” The Sheriff identified the persons loading the bags on the truck as appellant and Edward Morris. When the Sheriff first saw appellant and Morris they were coming in the direction of the old Cobb house and down to the parked truck.
The officers observed appellant and Morris until the truck was loaded and started driving away. As the truck was moving the right front tire went flat. Appellant and Morris got out and changed the tire. They put the flat tire on the bed of the truck, turned on the clearance lights and drove back across the flat pasture headed in a northern direction from the old Cobb house. The Sheriff then radioed Investigator Billingsly of the District Attorney’s Office and instructed him to get on the road which he knew would come out behind the pasture. The Sheriff got in his car and started to the road at the back of the pasture. While en route he got a radio call from Mr. Billingsly saying that he had spotted the truck. The Sheriff got to Mr. Bill-ingsly who informed him that he had lost sight of the truck as it came out of the gap. It was near midnight when the truck was first missed. The Sheriff called all law enforcement officers on duty but they were not able to find the truck until around 6:30 a. m. on September 10, 1978.
The Sheriff further testified that in driving around the pasture he came to a pine thicket and noticed some large bags in the woods. He drove around the pine thicket and found the truck in some bushes. The bags were stashed about 150 yards from the truck. The Sheriff stated this was the same truck which, he had seen at the old Cobb house the night before. On the bed of the truck he found a flat tire. He inspected the truck and found green vegetable material on the truck. There were fifteen garbage size paper bags found in the pasture and they were filled with green vegetable material which the Sheriff stated was marijuana.
Appellant was arrested later that day by the Sheriff when he arrived at the jail. He checked the tag registration on the truck and the truck belonged to appellant.
*875 Deputy Sheriff Thomas Walton testified on direct examination to substantially the same testimony as Sheriff Stephens.
On cross-examination his testimony was at variance with the Sheriff’s in respect to the persons who went to the Cobb house on the night of September 9, 1978. Mr. Walton testified that Clayton Andrews went with them that night. It developed that Clayton Andrews was an informer and, no doubt, the Sheriff did not want to divulge the fact that he was an informer.
The Sheriff was recalled to testify concerning Andrews and he testified that Andrews was introduced to him by the name of “Bear.” He stated that Lieutenant Bradford introduced Andrews to him and stated he was an informer.
0. E. Billingsly testified that he was an Investigator for the Sumter County District Attorney’s Office and participated in the investigation leading to the arrest and confession of appellant. It would overextend this opinion to set forth in detail Billingsly’s testimony. In sum, he testified that on the morning of September 10, 1978, he went to the location where the truck and bags of marijuana were found. He identified State’s photographic Exhibits E, H and G as being of appellant’s truck and these photographs were introduced into evidence. He stated the truck was registered to appellant. It was through this witness that photographs of the various bags of marijuana and the flat tire were introduced into evidence. One bag of marijuana and samples from the other bags were taken and sealed and were personally delivered to Craig Bailey, at the Toxicology Department, in Selma, Alabama.
On voir dire examination out of the presence and hearing of the jury this witness testified that he interrogated appellant after first giving him the Miranda rights and warnings, and appellant said he understood his rights. Billingsly further stated that no promises were made to appellant to get him to make a statement; that no threats were made against him; and that no offers of reward or other inducements were made or held out to appellant to get him to make a statement. The statement took the form of questions and answers. Appellant was asked where he was going with the marijuana that he had on his truck on the night of September 9 and he replied that he just had to move it, that he was moving it, and he really did not know where he was going with it, or where he was going to put it. He was asked where the marijuana came from and he said it did not come from the field that was burned but it came from a field west of Alabama Highway 17. He was asked who owned the marijuana and appellant replied that it was his and “Booger-Red’s.”
Billingsly denied that appellant stated he wanted to talk to David Reid, one of his attorneys, before he made any statement. According to Billingsly, the only time Reid’s name was mentioned was when he was walking with appellant to jail. They met Mr. Reid coming out of his office at the courthouse and appellant said he wanted to talk to Mr. Reid. This was after appellant had made the confessory statement. The trial court ruled appellant’s incriminating statement was voluntarily and knowingly made and was admissible in evidence.
Back before the jury Billingsly’s testimony concerning the events leading up to the statement given by appellant, including the Miranda rights, was identical to his testimony out of the presence of the jury.
Billingsly further testified that 150 pounds of marijuana were seized and the quality was top grade. In his best judgment a pound of this marijuana had a street value in Sumter County of $240.00 to $250.00 per pound.
Arthur Craig Bailey testified that he was a criminalist with the Alabama Department of Forensic Sciences. He stated his education and qualifications and described the various procedures for determining whether a substance is marijuana. He stated that when he received the bag and substances from Billingsly they were sealed. He stated that in his opinion each of the substances submitted to him was marijuana. All the State’s exhibits containing marijuana were then admitted into evidence.
*876 Lieutenant L. N. Bradford testified that he was employed by the Department of Public Safety and assigned to the Narcotics Division. It will serve no useful purpose to detail Bradford’s testimony as it is the same as that of the other officers in material and relevant part. He interviewed appellant after giving him the Miranda rights and warnings, and appellant stated he understood his rights.
Out of the presence of the jury the proper predicates were laid just as they were spelled out during the examination of Bill-ingsly in that no promises, threats, coercion, offers of rewards, or other inducements were made or held out to appellant to get him to make a statement. Bradford said that appellant told him that the marijuana that was found in the pasture on the morning of September 10, 1978 belonged to him and a person named “Booger-Red,” and that they were going to split the profit. Appellant did not tell him where the marijuana came from but stated they had planted it.
The trial court ruled that appellant’s con-fessory statement was knowingly and voluntarily made and was admissible.
Back before the jury the State laid the proper predicates and Bradford’s testimony was identical with that given out of the hearing of the jury.
The Sheriff was recalled and testified that he arrested appellant on September 10, 1978, for possession of marijuana. At this point State’s Exhibit “JJJ”, a certified copy of the vehicle registration for the one-ton pickup truck of appellant, was introduced and received into evidence.
There was additional testimony adduced by the State but, in the main, it was cumulative and tended to corroborate the other testimony presented by the State and we do not deem it necessary to further set forth the testimony.
At the conclusion of the State’s case appellant moved to exclude the State’s evidence on several grounds. This motion was overruled and we think rightly so. As stated by the Supreme Court in Young v. State, 283 Ala. 676, 220 So.2d 843:
“. . . Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the State’s evidence, the refusal to give the affirmative charge, and the overruling of a motion for new trial, does not constitute error. Drummond v. State, 37 Ala.App. 308, 67 So.2d 280; Wade v. State, 24 Ala.App. 176, 132 So. 71. . . .”
Appellant urges this court to reverse and remand this case on the ground that the trial court abused its discretion in not granting appellant’s motion for a continuance, and in overruling his motion for a change of venue.
Appellant was arrested on September 10, 1978, and was indicted on October 3, 1978. He was put to trial on November 29, 1978, and convicted on December 1, 1978. Six weeks intervened between arrest and trial. Six weeks is certainly ample time to prepare a case for trial.
 The matter of granting a continuance in a criminal case is addressed to the trial court’s sound discretion, the exercise of which will not be disturbed unless clearly abused. Hendricks v. State, 281 Ala. 376, 202 So.2d 738; Rogers v. State, Ala.Cr.App., 365 So.2d 322; Peterson v. State, 231 Ala. 625, 166 So. 20; Fletcher v. State, 291 Ala. 67, 277 So.2d 882.
The facts in this case were not complex and a continuance would not have done violence to the rights of the state; we, nevertheless, cannot hold the trial court abused his discretion in denying a continuance.
We do not think the trial court abused his discretion in overruling the motion for change of venue. A defendant seeking a change of venue has the burden to show that a fair trial could not be expected in the county in which the indictment was found. Gilliland v. State, 291 Ala. 89, 277 So.2d 901.
*877 The existence of widespread publicity alone does not indicate that the accused will not get a fair trial. Publicity by press, radio, and television is not necessarily a ground for change of venue. Without proof of prejudicial influence on the jury this court will not hold the trial court in error in refusing to grant a motion for change of venue. Mathis v. State, 280 Ala. 16, 189 So.2d 564; Hurst v. State, 54 Ala.App. 254, 307 So.2d 62; Mayola v. State, Ala.Cr.App., 344 So.2d 818; Johnson v. State, Ala.Cr.App., 335 So.2d 663.
As we have stated appellant called a number of witnesses, some of whom were relatives of appellant, and others who had been in business ventures with defense counsel, who testified that appellant could not get a fair trial in Sumter County. One of these witnesses stated that the pre-trial publicity had not convinced her or her friends of appellant’s guilt. Two witnesses did testify that appellant could not get a fair trial in Sumter County because the Dial surname was an unpopular one. The trial court reserved his ruling on the motion pending an examination of the jury venire. We have already noted that not a single member of the venire stated that appellant could not get a fair and impartial trial in Sumter County.
In treating this issue the Supreme Court of the United States in Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 held:
“The constitutional standard of fairness requires that a defendant have ‘a panel of impartial, “indifferent” jurors.’ Irvin v. Dowd, 366 U.S. [717] at 722, 81 S.Ct. [1639] at 1642 [6 L.Ed.2d 751], Qualified jurors need not, however, be totally ignorant of the facts and issues involved. “ ‘To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror’s impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.’ Id., at 723, 81 S.Ct. at 1642. “At the same time, the juror’s assurances that he is equal to this task cannot be dispositive of the accused’s rights, and it remains open to the defendant to demonstrate ‘the actual existence of such an opinion in the mind of the juror as well raised the presumption of partiality.’ ”
We construe the above quotation to mean that the burden rests on the defendant to adduce evidence to show that he cannot receive a fair and impartial trial. This the appellant failed to do. We hold the trial court was not in error in overruling the motion for change of venue.
Appellant strongly contends that his confessory statements to Lieutenant Bradford and Investigator Billingsly should have been excluded on the grounds that these incriminating statements were not shown to have been voluntarily made. We do not agree.
An extra-judicial confession, oral or written, is prima facie involuntary and inadmissible and the duty rests in the first instance on the trial court to determine whether the confession is voluntary, and, unless it so appears, it should not be admitted. It is also the law that a finding of the trial judge as to the voluntariness of a confession, following a hearing held outside the presence of the jury, will not be disturbed unless contrary to the great weight of the evidence and manifestly wrong. Hardin v. State, Ala.Cr.App., 344 So.2d 234; Balentine v. State, Ala.Cr.App., 339 So.2d 1063.
After a lengthy hearing out of the presence of the jury the trial court determined that appellant’s confession was voluntary and the confessory statements were properly admitted into evidence. Hardin v. State, supra; Myhand v. State, 259 Ala. 415, 66 So.2d 544; Humphrey v. State, 54 Ala.App. 62, 304 So.2d 617.
Appellant contends that his confession was induced by a statement from Lieutenant Bradford that if he cooperated by showing the officers other marijuana fields his cooperation would be made known to *878 the District Attorney. In an illuminating opinion by Judge Clark in Moss v. State, Ala.Cr.App., 347 So.2d 569, this identical issue was dealt with adversely to appellant’s contention. Judge Clark held:
“Defendant contended on the trial, and appellant now insists, that a confession made by defendant was shown by the testimony, preliminary to its receipt in evidence, to have been involuntary, and that the trial court was in error in admitting it. He relies upon some statements of one of the law enforcement officers to the defendant before he confessed that if he cooperated with the law enforcement officers, his cooperation would be made known to the District Attorney. Whatever tendency such statements might ordinarily have to show an inducement that would nullify a confession as evidence, they fail to do so when considered in context with the entire circumstances and conversations at the time between defendant and the law enforcement officers, and it can be determined therefrom that the confession was voluntarily and understandingly made, and that the statements made were not a factor in bringing about the confession.”
We find no error in the admission into evidence of appellant’s confession.
Appellant insists the trial court erred in refusing to give his requested charge no. 1. This charge reads as follows:
“If the prosecution had a witness possessing peculiar knowledge of the transaction, and supposed to be favorable to the prosecution, and the prosecution fails to produce such witness when he has the means of doing so, this in absence of all explanation, is grounds for suspicion against the prosecution that the testimony of the witness, if called would not have been favorable to the prosecution.”
Appellant relies on the case of Keeby v. State, 52 Ala.App. 31, 288 So.2d 813. Such reliance is. misplaced. Keeby involved two witnesses who were present at trial and could have been called by either of the parties.
We are at a loss to understand what witness appellant was referring to. The charge does not name the alleged witness. If appellant was referring to the informer, Andrews, he was not subpoenaed as a witness and no one seemed to know his whereabouts.
If appellant was referring to “Booger-Red”, he had not been arrested and his address was unknown. If he was referring to Edward Morris, the co-defendant, it is difficult for us to understand how his testimony would have been beneficial to the State under all the circumstances and evidence contained in this record. We cannot ascribe error to the trial judge in refusing this charge.
Finally, the appellant claims the trial court should have granted him a hearing before denying him probation. In the first place the record does not contain a request for probation. Just before the sentence was imposed appellant’s attorney asked the court if he needed a report and the court replied, “No, sir, I’m not going to need a report.”
Secondly, the original granting or denial of probation is entirely within the discretion of the trial court and is not reviewable on appeal from the judgment of conviction. Turner v. State, Ala.Cr.App., 365 So.2d 335.
We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.