# Dean v. The State.

## Indictment for Murder.

1. *Evidence as to defendant being weak minded; when inadmissible.*— If a person is endowed with mind enough to discriminate between right and wrong, the fact of his being weak minded can not relieve him from responsibility for a criminal act; and in a criminal prosecution, where there is no evidence that the defendant did not have mind enough to discriminate between right and wrong, evidence that he was a man of weak mind is inadmissible.

2. *Evidence; excitable nature of defendant.*—Where, on a trial under an indictment for murder, the evidence shows that the defendant was not excited at the time of the homicide, evidence relative to the defendant's excitable nature is inadmissible.

3. *Same; remarks of wife as res gestae.*—On a trial for murder, the remarks of the wife of deceased addressed to him soon after he was shot, to the effect that he had said he would kill the defendant, are not admissible as part of the *res gestae*.

4. *Same; admissions; inferred from silence.*—On a trial under an indictment for murder, the remarks of the wife addressed to him soon after he was shot, to the effect that he had said he would kill the defendant, are not admissible in evidence on the theory that the de-

ceased by making no denial of the statement admitted its truth, it being shown that the deceased was unable to speak.

5. *Same; evidence of deceased's violent character.*—Where, on a trial under an indictment for murder, no evidence has been introduced of the blood-thirsty or violent character of the deceased, a question asked the defendant as a witness in his own behalf, as to whether he knew that the deceased was a blood-thirsty, violent man, is properly excluded, since the inquiry assumes the defendant's knowledge of a fact which is not proved.

6. *Same; when statements by defendant irrelevant.*—On a trial for murder, a statement made by the defendant in testifying as a witness that the time of the homicide "was the darkest hour of his life," is irrelevant to any issue in the cause, and is properly excluded.

7. *Same; uncommunicated intention.*—A witness can not testify as to the uncommunicated intention with which he did an act; and, on a trial under an indictment for murder, the court properly refuses to allow the defendant as a witness in his own behalf to be asked, for what purpose he took his gun to the scene of the homicide.

APPEAL from the Circuit Court of Tallapoosa.

Tried before the Hon. N. D. DENSON.

The appellant was indicted and tried for the murder of one George A. Wood, and was convicted of manslaughter in the second degree, and his punishment fixed at hard labor for the county for one year. On the trial of the cause, the evidence tended to show that the defendant with some neighbors went to examine a fence of the deceased, whom it was shown had killed some of the defendant's sheep. That when the defendant, with his neighbors, came to the fence that was to be examined, they saw the deceased at work some 50 or 60 yards from the fence; that two of the party approached the deceased, and told him that they had come with the defendant to examine his fence, to which the deceased replied that it was all right, and turned to the defendant who was sitting on the fence about 50 or 60 yards away, and asked him about the law suit that was pending; that thereupon the deceased and defendant got into a quarrel, and deceased cursed the defendant, and started towards him; that the defendant who had a gun backed off from the fence as the deceased approached it; that as the deceased was getting over the fence he put his right hand to his hip pocket, and cursing the defendant, said he was not afraid of him or his gun; whereupon the defendant fired upon the deceased and wounded him, from the effects of which wound he died within an hour.

There was evidence on behalf of the State tending to show that the deceased did not put his hand in his hip pocket, nor threaten the defendant.

Upon William Turner, a witness, testifying that he had known the defendant for 16 years, he was asked this question: "Is defendant a strong or weak minded man?" The solicitor objected to the question, the court sustained the objection, and the defendant duly excepted. The defendant then asked the witness the following questions, to each of which the State objected, and the defendant separately excepted to the court's sustaining each objection: "When you excite Mr. Dean does he become very much excited?" "When anything occurs to excite Mr. Dean does he not become over-balanced?" "When defendant becomes excited to any considerable extent does he not lose his reason?" This witness having testified that he was present at the shooting, the defendant asked him: "If defendant was not very much excited and agitated when he did the shooting?" The witness answered that he was not. This witness further testified that deceased lay on the ground where he was shot until he died; and that he never spoke after being shot. The defendant proposed to prove by said witness "that the wife of deceased came to the place where he was shot in 15 or 20 minutes after the shooting, and ran up to where the wounded man was, and said 'George,' speaking to deceased, 'you said you would kill Charlie,' meaning defendant, 'but now he has killed you,' to which her husband made no reply." The State objected to this testimony, and the defendant duly excepted to the court sustaining the objection.

Upon defendant being examined as a witness in his own behalf, he was asked: "If he knew Wood's disposition for fighting?" The State objected to this question, which objection the court sustained, and the defendant duly excepted. The defendant was asked by his council: "What did you take your gun down there for?" The court sustained the State's objection to this question, and the defendant duly excepted. The defendant then testified: "That it was the darkest hour of his life; that he did not know what he was doing when he shot." The State objected to this evidence, which objection the court sustained, and the defendant duly excepted. Upon defendant offering to testify that

he was afraid of Wood, the State objected, and the defendant duly excepted to the court sustaining such objection. The defendant was then asked : "At the time Mr. Wood started over the .fence at you, did you not know he was a blood-thirsty, violent man?" The court sustained the State's objection to this question, and the defendant duly excepted.

W. D. BULGER, for appellant.

W. C. FITTS, Attorney-General, for the State.

McCLELLAN, J.—The strength of a man's mind has no bearing upon his responsibility for a criminal act, nor upon the inquiry of felonious intent, malice, and the like, if he is endowed with mind enough to discriminate between right and wrong ; and the fact that he may, in common parlance, be of weak mind, standing alone, does not go to negative such discriminating intelligence. The proposed evidence of the witness, William Turner, as to whether the defendant was "a strong or weak minded man," was clearly incompetent.

The proposed evidence to the effect that when the defendant·was excited "he became very much excited," that if anything occurs to excite the defendant "he becomes overbalanced," and that "when the defendant becomes excited to any considerable extent he loses his reason," was also properly excluded, both because this testimony was impertinent in itself, and because so far from there being any evidence in the case that the defendant was excited at the time of the homicide, the only evidence on that point was to the effect that he was not excited at all ; and this by the witness by whom it was attempted to be proved that the defendant became very much excited, and overbalanced, and lost his reason when excited.

The declaration of the wife of the deceased addressed to her husband some time after the latter was shot by defendant, to the effect that he, her husband, had said he would kill Dean, the defendant, was not of the res gestae of the homicide ; and it was not admissible on the theory that its truth was admitted by the wounded man, in that he made no denial of it, since it clearly appears that he was incapable of speech, if not unconscious, from the

time he was shot until he died, a period of about one hour.

The defendant, being a witness in his own behalf, was asked by his counsel : "If he knew Wood's [the deceased's] disposition for fighting?" and if he knew at the time Wood started toward him just before the shooting that he, Wood, was a blood-thirsty, violent man? It will suffice to say of the ruling out of these questions by the court that they each assume the violent character of Wood, of which, so far as the record informs us, there was not a particle of evidence, and are directed solely to defendant's knowledge of this assumed fact.  It was a fact to be proved before either its existence or defendant's knowledge of its supposed existence could be of any avail to him or relevancy in the case.

What pertinency the fact that the defendant considered the time of the homicide "the darkest hour in his life" had to any issue in the case we are unable to conceive ; and the exclusion by the court of this proposed testimony can not be converted into an error by the fact that in the same connection the defendant further testified that he did not know what he was doing when he shot, and the consideration that this latter statement was offered with the other.  If it be conceded that the defendant might testify that he did not know what he was doing, which we do not decide, the court yet committed no error in excluding that testimony when offered, as here, only as one part of a statement, the other part of which was irrelevant.

It has been many times decided by this court that a witness can not depose to the uncommunicated intention with which he does an act.  The court, therefore, did not err in refusing to allow the defendant as a witness in his own behalf to be asked : " What did you take your gun down there for? "

Affirmed.