26 So.2d 566

## HALL v. STATE.

### 6 Div. 413.

Supreme Court of Alabama.

June 13, 1946.

F. F. Windham, of Tuscaloosa, for appellant.

Wm. N. McQueen, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

GARDNER, Chief Justice.

The appeal is from a judgment of conviction for the offense of rape, with punishment fixed at imprisonment for 23 years. Defendant, recently discharged from the Army, was 23 years of age.

The alleged victim of the assault, Mrs. Verner McKinley, resided in the country beyond Northport and about six miles from the City of Tuscaloosa, where she and her husband had resided alone for some 11 years. While Mr. McKinley was away at work and Mrs. McKinley was alone in the house, about 1:30 p.m. of August 15, 1945, the defendant Louis Hall knocked on the front door and was admitted. It appears that defendant had attended school where Mrs. McKinley had taught in 1936, 1937, and 1938, and she had not seen him since he had left the school in 1938. She states that after some few moments she recognized him as her former pupil; whereupon she opened the door, let him in, and asked him to have a seat.

Mrs. McKinley had been married some 20 years, and had taught school for practically that length of time. She talked to the defendant some time in the house, and states in her testimony that in order to terminate the visit she went into the yard and was followed by this defendant. He made frequent requests for water, and in the course of time—without further detail—Mrs. McKinley became suspicious that perhaps he was there for some ulterior motive. She went back into the house, concealed some money that had been left on the table, gathered her car keys, and went about some household duties, but defendant followed her into the house. Finally, as she started out the back door to go to her car, which was in the garage, her testimony is to the effect that he grabbed her by the throat, choked her, forcibly threw her to the floor, and had intercourse with her; that during this time she was resisting him with all her power while he threatened her and choked her. Getting up

36

from the floor she rushed to her car, with the defendant following her. As he tried to get in the car she placed it in reverse so as to knock him down and escape to her brother-in-law's house, some one mile away.

■ The evidence is practically without dispute that there were scratches on her face, bruises on her hips and knees, and abrasions on her neck, all of which tended strongly to corroborate her testimony. Upon arriving in her car at the home of her brother-in-law, the State was permitted to prove, and properly so, that Mrs. McKinley made immediate complaint concerning the attack. On direct examination such testimony is confined to the fact of the complaint; and details of the occurrence, including the identity of the person accused, are not proper subjects of inquiry. This is the well-established rule by numerous decisions, quite a number to be found cited in the recent case of Lee v. State, 246 Ala. 69, 18 So.2d 706. This rule was violated in the instant case in that the solicitor was permitted to show by the witness that, in addition to the complaint of the attack, she also named Louis Hall as the accused person.

■ But to the indictment in the case the defendant plead not guilty, and not guilty by reason of insanity. And upon the plea of not guilty, he insisted that he was not only present at the time stated by Mrs. McKinley, but that he had intercourse with her and with her consent. Under these circumstances, therefore, we would not be willing, in view of Supreme Court Rule 45, Appendix p. 1022, Vol. II, Code 1940, Tit. 7, to rest a reversal upon this erroneous ruling, as upon a consideration of the whole record it could not be said to have prejudicially affected any substantial right of the defendant.

■ Mrs. McKinley testified rather fully as to the details of the attack, and the statements to which objections were interposed to the effect that "he just choked me to death" and that he "did accomplish his purpose" were but shorthand renditions of facts, the details of which were subsequently given. There was no error in these rulings.

■ It is quite apparent from the record that the greater reliance for defense was upon the issue of insanity. There was evidence of hereditary taint, both upon the paternal and maternal sides of defendant's family, and defendant testified to confinement in military institutions for the insane while in the Army. He had, prior to his induction in the Army, been in the State institution for the feeble-minded at Tuscaloosa.

But our cases are in accord with the general current of authority that mere weakness of mind, standing alone, does not negative discriminating intelligence as required for responsibility for crime. Dean v. State, 105 Ala. 21, 17 So. 28; 22 C.J.S., Criminal Law, § 58, pp. 122, 123; 44 A.L. R. p. 586 et seq.

■ But upon the question of insanity a wide range of evidence is allowable. "It has become a maxim of the law that in cases where insanity is relied upon as a defense, 'Every act of the party's life is relevant to the issue.'" Brothers v. State, 236 Ala. 448, 183 So. 433, 435.

Of course, as pointed out in Coffey v. State, 244 Ala. 514, 14 So.2d 122, this broad expression must be understood to carry the necessary limitation that the acts inquired about must throw some light upon the inquiry. The Coffey case furnishes an apt illustration of this limitation.

■ And our decisions are uniform to the effect that the issue of insanity gives much latitude, both to the defendant and the State, for the introduction of evidence of defendant's acts, declarations, and conduct, prior and subsequent to the alleged crime. Illustrative of subsequent conduct is the recent case of George v. State, 240 Ala. 632, 200 So. 602, where, upon the question of insanity, it was held that the defendant's attempt at suicide subsequent to the alleged crime was admissible. See also Coffey v. State and Brothers v. State, supra, with the numerous authorities therein cited.

This question was given rather lengthy consideration in the early case of McLean v. State, 16 Ala. 672, in which the Court observed:

"The court ruled that neither the prisoner's acts nor declarations, after the alleged offense was committed, could be received as evidence of insanity at the time the act was done. In this view we think the judge clearly mistook the law. Insanity, or a diseased state of the mind, must be proved to the jury, like other diseases, or facts, and it is laid down generally, that evidence of the state of his mind, both before and after the act done, is admissible."

The opinion in that case proceeds to answer the argument to the contrary, particularly that based upon the theory the defendant could feign insanity subsequent to the offense. To this argument the opinion replies that the jury are the appropriate judges of the weight to be attached to such evidence. The rule there announced has, as above indicated, been subsequently followed in numerous decisions.

■ In line with this rule defendant offered to show by the jailer, that after the commission of the crime, and while the defendant was incarcerated in the jail, he had a fit of a violent character which required the services of a physican. The Court remarked: "You are asking about a time since the crime was committed. I will sustain the objection." Evidence in regard to a defendant having fits appears to have been received without objection in McLean v. State, 16 Ala. 672. And we think the definition of a "fit" as found in 36 C.J.S. p. 883 suffices to show that defendant was entitled to pursue this line of inquiry and disclose from the proof the character of the attack.

It is to be noted in the text of 36 C.J.S., supra, that the plural, i. e. "fits," is considered the layman's term for epilepsy. And in 44 C.J.S. Insane Persons, § 2, p. 29 it appears that epilepsy is a medical term used to designate a disease of the brain which occurs in paroxysms with uncertain intervals between them; and that epilepsy has been held synonymous with fits.

The ruling of the court denying the defendant this character of proof, as we have indicated, was rested upon the theory that it occurred subsequent to the date of the alleged crime. As we have shown, this was a misconception of the rule, and we are persuaded that prejudicial error here intervened.

■ Defendant offered the testimony of several physicians who had more or less expert knowledge in mental diseases. Among them was Dr. Mayfield, who was permitted to testify that defendant was, in his opinion, born with a low mentality and a handicapped mind; that it reached a peak of development at a mental age of around six or seven years and then stopped; that he had been subnormal in comparison with other children of his age, always handicapped and inferior mentally. The doctor had previously testified that upon his interview with the defendant he manifested nothing that reflected insanity. He was "just mentally deficient." The question, therefore, propounded to Dr. Mayfield to which objection was interposed and sustained, as to whether or not the defendant in his opinion had a mind of about a "six or seven year old chap," was in fact answered in that portion of Dr. Mayfield's testimony above-noted.

■ We may add here, however, our agreement with the authorities to the effect that criminal responsibility does not depend upon the mental age of the defendant, and that a comparison of an adult person with the mental age of a child is not the proper method of proof in cases of this character. Such was the holding of the Massachusetts Court in Commonwealth v. Trippi, 268 Mass. 227, 167 N.E. 354, and of the New Jersey Court in State v. Schilling, 95 N.J.L. 145, 112 A. 400. See also the cases found cited in the note to the text of 22 C.J.S. Criminal Law, § 58, p. 122.

■ We prefer to adhere to the rule announced in the Parsons case, Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193, recently re-affirmed in Reedy v. State, 246 Ala. 363, 20 So.2d 528, which requires in insanity cases that the proof should show, that at the time of the commission of the crime the defendant was afflicted with a diseased mind to the extent: (1) He did not know right from wrong as applied to the particular act in question, or (2) if he did have such knowledge, he nevertheless, by reason of the duress of such mental disease had so far lost the power to

select the right and to avoid doing the act in question as that his free agency was at the time destroyed, and (3) that, at the same time, the crime was so connected with such mental disease, in the relation of cause and effect, as to have been the product of it solely.

■ But in the examination of the expert witnesses there were objections to evidence, interposed by the State, which were sustained upon the theory that the matters inquired about were subsequent to the time of the alleged offense. Illustrative, and perhaps more serious, was the testimony of Captain Kahn, who was a physician at the Veterans Hospital at Tuscaloosa, and who had had previous experience of some four years in other localities. Captain Kahn had occasion to observe the defendant when he was at the hospital, both prior to the alleged offense and subsequent thereto. A number of questions were asked Captain Kahn, to which objections were sustained. Perhaps some of these questions were bad in form· and the manner of their presentation was such as to avoid reversible error. The ruling, however, seems to have been based upon the erroneous theory that the witness could not testify to his opinion concerning an examination made after the alleged crime was committed.

But the question, as ·found on page 95 of the transcript, to which objection was interposed and sustained and an exception reserved, appears to follow the outline of. our decision in the Parsons case as reproduced in Reedy v. State, supra. Indeed, the numerous objections interposed and sustained to the testimony of Captain Kahn, an expert witness who had had observation of the defendant, resulted, in effect, in eliminating his testimony and thus depriving the defendant of its benefit.

■ We have observed that mere weakness of mind is not the proper test as to criminal responsibility. But upon the question of insanity a wide range of evidence is allowable. As previously noted, defendant had, prior to his induction into the Army, been an inmate of what is commonly known as the institution for the feeble-minded, but denominated in our statute as "The Partlow state school for mental deficients." Title 45, § 231, Code 1940. By virtue of his office, the superintendent of the Alabama insane hospitals, whom we judicially know to be Dr. Partlow, is superintendent of this institution. Title 45, § 233, Code 1940.

■ Dr. Partlow, a witness called by the defendant, was asked for the record of defendant when an inmate of the home for the feeble-minded. He had the record with him. Defendant offered to show Dr. Partlow's familiarity with the records, and that they were made in the regular course of business of the institution, and were so made under his supervision. The definition of those persons admissible to this institution is found in Sec. 236, Title 45, Code 1940, and includes idiots, imbeciles, morons and the like; and the following section makes provision for transfer of any patient therein to the authorities of the insane hospital when such patient shall become insane, violent or unmanageable.

Considering the wide latitude allowed upon the question of insanity, we are of the opinion Dr. Partlow should have been permitted to testify as to these. records. The provisions of Sec. 415,_Title 7, Code 1940, were given application to hospital records in Wilson v. State, 243 Ala. 1, 8 So.2d 422, as disclosed by the tenth headnote. Under this statute, as thus construed, there was error to reverse in the rejection of. the evidence sought to be elicited from Dr. Partlow.

The objections interposed by the State were numerous, and consequently many questions presented which we feel are unnecessary here to treat in detail. We have here considered those we think more serious, and have expressed our views in such a manner as we trust will be of benefit on retrial of the cause.

For the errors indicated we feel impelled to reverse the judgment and remand the cause for a new trial.

Reversed and remanded.

FOSTER, LAWSON, and STAKELY, JJ., concur.