66 So.2d 544

### MYHAND v. STATE.

### 4 Div. 711.

Supreme Court of Alabama.

June 30, 1953.

Rehearing Denied Aug. 6, 1953.

Jas. A. Mulkey, Geneva, for appellant.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

**PER CURIAM.**

The appeal is from a judgment of conviction for rape, with infliction of the death penalty.

The date of the alleged crime was fixed as May 21, 1952. Appellant was indicted by a grand jury of Geneva County on July 24, 1952, and arraigned on that day. He was unable to employ counsel, so prior to arraignment the trial court, under the provisions of § 318, Title 15, Code 1940, as amended, appointed counsel to represent him. Upon arraignment, Myhand, the appellant, pleaded not guilty and not guilty by reason of insanity. As shown above, the jury found him guilty and imposed the death penalty. Judgment and sentence were in accord with the verdict. Motion for new trial was overruled. The appeal here is under the automatic appeal statute. §§ 382(1)–382(13), Title 15, Code 1940, 1951 Cum.Pocket Part, pp. 100–104.

The locale of the alleged crime is a farming community in the eastern part of Geneva County where appellant and prosecutrix both lived.

Prosecutrix, Shelby June Edmondson, is a young white girl, the daughter of a tenant farmer. She was not quite thirteen years of age at the time the crime is said to have been committed.

Appellant, Reuben Myhand, is a young Negro man who was about twenty years of age at the time of the alleged crime. He lived with his parents, who were also tenant farmers and who lived on the farm of Mr. Clyde Merritt, a short distance from the home of the Edmondsons.

We see no necessity for making a detailed statement of the evidence. For the purposes of this appeal we think the following summary will suffice.

The prosecutrix testified that shortly after two o'clock on the afternoon of May 21, 1952, when she and her two-year-old brother were on their way to a field where her parents and another brother were working, she was stopped by a Negro man, who had a handkerchief over his face and who pushed and shoved her into a deep ditch, bordered by thick growth. While in the ditch she removed her underclothes as the result of threats made by the Negro man, and thereafter he inserted his private part into her vagina. While in the ditch the handkerchief fell from the man's face. He replaced the handkerchief over his face, but not until after she had gotten a good look at him. The man was wearing a brown shirt with a safety pin in it and overall pants.

After she was released by her assailant, she and her little brother returned to their home and after remaining there a few minutes, they went to the field where her parents were working, where she reported the fact of the attack. Prosecutrix was taken to Slocomb, a nearby town, where the attack was reported to the police authorities

and where prosecutrix was examined by a physician. The fact that the vagina of the young girl had been recently penetrated is definitely established by medical testimony.

According to the testimony of Mr. Clyde Merritt, the employer of appellant, who was called as his witness, he saw and talked with appellant at about four o'clock on the afternoon the crime is said to have been committed. While talking to appellant at the home of a colored man by the name of Taylor, Mr. Merritt heard through another person of the alleged attack upon the young Edmondson girl. Merritt immediately went to the Edmondson home, where he heard the description given by the young girl of the man who had attacked her. He contacted the police officers, who accompanied him back to the Taylor home, but appellant had left and gone to his home situate just a short distance away from the residence of Mr. Merritt. Mr. Merritt and the police officers found appellant at his home. He was wearing clothes similar to those said to have been worn by the alleged rapist. Appellant was taken to the Edmondson home where he was identified by the young girl and where he was placed under arrest.

Shortly after his arrest, appellant was driven in a highway patrol car to a point near the city of Geneva, the county seat of Geneva County. It having been determined it would be advisable to confine appellant in the Houston County jail, he was placed in another highway patrol car and driven to Dothan.

Aside from the positive identification of appellant by the prosecutrix, the State introduced in evidence admissions of guilt made by the defendant and also introduced certain evidence of a scientific nature tending to show that appellant was the party who attacked the young girl.

On the trial Myhand denied his guilt and repudiated the alleged confessions, contending they were extorted from him by coercive methods. He sought to establish an alibi, but as we read the record his statement as to his whereabouts at the time the offense is alleged to have been committed stands uncorroborated.

Penetration alone, the other elements of the crime concurring, is rape without regard to actual completion of the sexual act. § 396, Title 14, Code 1940; Posey v. State, 143 Ala. 54, 38 So. 1019; Waller v. State, 40 Ala. 325; Herndon v. State, 2 Ala.App. 118, 56 So. 85; Harris v. State, 2 Ala.App. 116, 56 So. 55.

The evidence was not only sufficient to take the case to the jury on the charge of rape, but was amply sufficient to support the verdict of the jury.

There was very little, if any, evidence tending to support the plea of not guilty by reason of insanity. Certain it is that we cannot say that the jury was not fully justified in finding that appellant failed to meet the burden which was upon him to clearly prove this defense to the reasonable satisfaction of the jury. § 422, Title 15, Code 1940; Parsons v. State, 81 Ala. 577, 2 So. 854; Wingard v. State, 247 Ala. 488, 25 So.2d 170; Hall v. State, 248 Ala. 33, 26 So.2d 566; Lakey v. State, 258 Ala. 116, 61 So.2d 117.

The able counsel who were appointed to defend Myhand in the court below have been appointed to represent him on this appeal, and we think it in order to observe at this point that the appointed counsel have taken their responsibilities seriously and have done their full duty intelligently and well.

In the main, counsel for appellant in brief filed here argue for reversal of the judgment below because of admission by the trial court of certain evidence offered by the State and because of argument of the State's counsel.

Reversible error does not appear in the action of the trial court in permitting the solicitor to ask leading questions of the witness Shelby June Edmondson, the prosecutrix, who at the time of the trial was thirteen years of age. Brassell v. State, 91 Ala. 45, 8 So. 679; Puckett v. State, 213 Ala. 383, 105 So. 211; Stewart v. State, 26 Ala. App. 392, 161 So. 112; Ballew v. State, 23 Ala.App. 274, 124 So. 123.

The undergarments worn by Shelby June Edmondson at the time of the attack were properly identified and were shown by

the testimony of an expert witness to contain human blood stains. Such undergarments were admitted in evidence without reversible error. Taylor v. State, 249 Ala. 130, 30 So.2d 256; Robinson v. State, 243 Ala. 684, 11 So.2d 732; Puckett v. State, supra.

Immediately after Myhand was brought to the Houston County jail he removed the outer clothes he was wearing—shirt with safety pin in it and overall pants—and put on some clothes which belonged to Highway Partolman Prier. These articles of clothing of appellant were delivered by Officer Prier within a short period of time to Assistant State Toxicologist Sowell, who kept them in his possession until time of trial. It having been shown that on the afternoon of the attack appellant was wearing these articles of clothing, the trial court permitted them to be introduced in evidence by the State.

■ Appellant's counsel recognizes the rule of our cases to the effect that the wearing apparel of a defendant, identified as that worn by him at the time of the crime, when tending to shed light on the issues is properly admitted in evidence. Taylor v. State, supra; Robinson v. State, supra; Daniels v. State, 243 Ala. 675, 11 So.2d 756.

■ ▪ Counsel for appellant insist, however, that appellant's clothing was improperly admitted in evidence for the reason that appellant was compelled to remove his clothes and give them to Officer Prier and hence to permit the introduction of the in evidence was tantamount to compelling appellant to produce testimony against himself, in violation of the provisions of Art. 1, § 6 of the Alabama Constitution. Without passing on the question of whether such articles of clothing would have been admissible if the evidence showed that appellant was compelled to deliver them to Officer Prier, we are of the opinion that the trial court did not err in permitting the State to introduce the clothing in evidence for the reason that under the evidence adduced the trial court was amply justified in finding that appellant was not compelled to take off his clothes and give them to the officer, but that he did so readily and voluntarily upon being told by the officer that the latter wanted to keep the clothes for evidence. Moss v. State, 146 Ala. 686, 40 So. 340.

■ While appellant was being driven to Dothan from a point near Geneva, the officers who had him in custody contacted by radio a "medical technologist" connected with a Dothan hospital. Upon arriving at Dothan the appellant was taken to the hospital and there the "medical technologist" took "smears" from appellant's penis. These "smears" were placed on "slides" which were put in an envelope and delivered to Officer Prier, who then took the envelope and its contents to the Houston County jail. Within a short time Officer Prier delivered the envelope containing the "slides" to Assistant State Toxicologist Sowell, who in turn carried the envelope and its contents to his headquarters in Auburn, where the "stains" on the "slides" caused by the substance which had been placed thereon were examined under a microscope and analyzed.

Mr. Sowell was called as a witness by the State. The trial court found him qualified to testify as an expert relative to the "stains" on the "slides." His qualifications are not here questioned. In substance Mr. Sowell testified that the "stains" which he examined disclosed the presence of three types of blood cells—red and white blood cells commonly found in all parts of the body and the blood system, and "Epithelius cells," which are found, according to the witness, only in the rectum and mouth and in the vagina of a woman. Such cells, according to the witness, are not found in the penis of a man or on the outside skin of the penis. Such cells cannot be "transmitted" but they can be "sloughed off and abraded." This witness also testified that he found "Epithelius cells" on one of the undergarments worn by the prosecutrix at the time of the attack.

Appellant, through his counsel, asserts that the trial court erred to a reversal in permitting the witness Sowell to testify as to the result of his examination of the "stains" on the "slides," which "stains" were caused by the substance taken from the penis of defendant.

The State clearly met the burden of identifying the "slides" and showing that they

were in the same condition when examined by Mr. Sowell as they were immediately after the substance was placed thereon.

Appellant's main insistence in connection with the aforementioned testimony of Mr. Sowell is that the substance was taken from his penis in violation of his constitutional right not to be compelled to furnish evidence against himself.

We cannot agree with the position taken by counsel for appellant for two reasons: first, the evidence as it bears on the taking of the "smears" fully supports the finding that appellant was not forced or coerced to permit the smears to be made. It appears from his own testimony that he was perfectly willing to submit to the tests. The evidence supports a finding that appellant was not compelled or induced to submit to the tests by threats or promises and the mere fact that the tests were made in the presence of officers of the law does not, in our opinion, conclusively show that appellant did not voluntarily permit the tests to be made. See Potter v. State, 92 Ala. 37, 9 So. 402.

 Regardless of the rule in other jurisdictions, it seems to be well settled in this state that facts ascertained and opinions formed by an examination of an accused without his consent or when his consent to the examination has been improperly obtained are not inadmissible on that account. See Hunt v. State, 248 Ala. 217, 27 So.2d 186, and cases cited.

There is no merit in the contention that the confessions of the accused were improperly before the jury.

 Extrajudicial confessions are prima facie involuntary and inadmissible and the duty rests in the first instance on the trial court to determine whether or not a confession is voluntary and unless it so appears, it should not be admitted. Thomas v. State, 257 Ala. 124, 57 So.2d 625.

 Before the trial court would permit the introduction in evidence of the statements in the nature of a confession alleged to have been made by appellant, the State was required to account for the treatment accorded appellant from the time he was first taken into custody. Before the court admitted the confessions, the witnesses for the State, testifying in regard thereto, were examined out of the presence of the jury, both on direct and cross. Likewise, the defendant was placed on the stand by his counsel and permitted to give his version of what transpired. The court having determined from such examination that the confessions should be admitted in evidence, the jury was recalled and the witnesses examined before the jury.

During the examination of the witnesses in and out of the presence of the jury, the State introduced evidence tending to show that no threat was ever made against accused; that he was not physically mistreated; that he was not told it would be better for him to make a confession or worse for him if he did not; that no reward was offered or held out to him to get him to confess; that no inducement of any kind was made to him; that he was told that he did not have to make a statement and that any statement which he did make could be used in a court of law. As before indicated, counsel for accused was permitted to examine the witnesses at length before the confessions were admitted.

We think the predicate as laid by the State was in all respects sufficient to show prima facie that the confessions were made voluntarily, there being nothing in the record to indicate that under the circumstances prevailing at the time the confessions were made, when considered with the age, character and situation of appellant, he was deprived of his free choice to admit, to deny or to refuse to answer. Arrington v. State, 253 Ala. 178, 43 So.2d 644; Phillips v. State, 248 Ala. 510, 28 So.2d 542, and cases cited.

 The questioning of a suspect while in the custody of law enforcement officers is not prohibited either by the common law or by the Fourteenth Amendment, nor is a confession rendered inadmissible solely by virtue of the fact that it was made while the accused was in the custody of such officers. Under the decisions of this court, the fact that a confession is made while the defendant was under arrest does not render it inadmissible, nor is a confession rendered inadmissible merely because of the fact that

the officers to whom the confession was made were armed. Phillips v. State, supra, and cases cited.

In this state a confession is not inadmissible solely because it was made after arrest by an officer and before the accused was taken before a committing magistrate. Such is the effect of our holding in Ingram v. State, 252 Ala. 497, 42 So.2d 36.

There was no evidence of protracted questioning leading up to the making of any of the confessions, or the use of any highpowered lights or similar. devices as are sometimes said to be found in investigating offices. Accused was not required to disrobe. It does not appear that any request of the accused for food, drink or cigarettes was denied or that he was denied the right to see family or friends.

True, accused when examined as à witness gave evidence to the effect that the confessions were not voluntarily made by him because of the fact he was told by the interrogating officials that unless he did confess he would be turned over to "the mob." The accused evidently had reference to a group present at the home of the prosecutrix when accused was taken in custody. In the first place, the evidence in this record does not even remotely tend to show that this group of people had evidenced any hostility toward the accused. It does not appear that they were armed or in a threatening mood. Moreover, the interrogating officers emphatically denied that any such statement was made to the accused. The accused did not claim that he was ever physically mistreated.

On the whole evidence with respect to the confessions, there is nothing to show that the trial court's action in admitting them was manifestly wrong or that defendant's rights under the federal constitution were infringed. Phillips v. State, supra; Peoples v. State, 256 Ala. 612, 56 So.2d 665.

The probative effect to be given the confessions was for the jury. Thomas v. State, supra.

During the opening argument to the jury, the county solicitor made the following statement: "At the same time the citizens of Geneva County are to be complimented. Too many times have we heard of cases of this character which result in what we call lynching." Counsel for appellant duly objected to the statement and moved for a mistrial. The trial court overruled the motion afer making the following statement to the jury:

"Gentlemen, you will not consider that argument at all. The question of lynching is not involved in this case, and that is excluded from your consideration. It is a matter for you to decide what the verdict is and not what happened in other cases."

Later on in the State's opening argument to the jury, the county solicitor stated: "These lawyers, deep down in their hearts, know that this defendant is guilty." Counsel for the defendant objected. The trial court observed: "Yes, that is excluded." Counsel for defendant also moved for a mistrial, whereupon the trial court made the following statement to the jury:

"Gentlemen, it is not what the defendant's lawyers believe or don't believe about this case. That is not for your consideration. It is what you believe from all the evidence as to whether or not this defendant is guilty. That is what counts. So, therefore, you will not consider any statement by the solicitor that the defendant's lawyers may believe deep down in their hearts that the defendant is guilty. That is not part of the evidence and you are not to consider that at all. You confine your belief to all of the evidence in the case, and disassociate any belief on the part of anybody else in your judgment in the matter. So that statement is excluded."

In the State's closing argument to the jury, the circuit solicitor made the following statement: "I am sure you are not going to let the people in the community down; you are not going to let this crowd down." Counsel for defendant objected to the statement and moved for mistrial "because the solicitor stated that he did not want this jury to let this crowd down." The circuit solicitor then said: "I said let the people in this community down, let us

down, and let all of this crowd down." Counsel for defendant again moved for a mistrial. Again the trial court overruled the defendant's motion for a mistrial after stating to the jury:

"Gentlemen of the jury, it is not a question of letting anybody down in this case at all. The community and the people at large are not involved in the trial of this case. The defendant is involved in this case and the state prosecuting on behalf of the State of Alabama, and you are to be guided by the evidence and the evidence alone, nothing else but the evidence, and you will determine the guilt or innocence, as I will charge you, from the evidence adduced from this witness stand and from all of that evidence, and whether or not anybody has been let down has nothing whatsoever to do with this case. That is not the point at all. You will not take that into consideration under any circumstances or conditions and you will disregard the remark of the solicitor so far as letting the crowd down, or whatever he said, and confine your verdict to the evidence and nothing else. So, gentlemen, under those instructions I overrule the motion of the defendant for a mistrial."

Counsel for defendant reserved an exception to each of the court's rulings overruling the motions for mistrial.

As grounds of motion for new trial defendant below, appellant here, assigned the action of the trial court in refusing to grant his motions for mistrial because of the argument of counsel for the State, to which we have referred above. Evidence was taken in support of the motion for new trial. Such evidence shows that while the courtroom was filled by a crowd of approximately three hundred persons, all of whom were seated, there was no demonstration at the time the arguments were made or at any other time during the trial. There were a number of officers present but this is not an unusual circumstance in the trial of capital cases.

The statements of counsel for the State with which we are here concerned were improper. But the trial court acted prompt-ly in each instance to impress upon the jury that such statements should not be considered by them in their deliberation. We are clear to the conclusion that the clear and forceful manner in which such instructions were delivered effectively removed any prejudicial effect of such statements. Johnson v. State, 242 Ala. 278, 5 So.2d 632; Pilley v. State, 247 Ala. 523, 25 So.2d 57. The trial court was in a position to observe the effect, if any, of such statements upon the jury after his instructions to disregard had been given. It is clear from his statements incorporated in the judgment overruling the motion for new trial that the verdict of the jury was based solely upon the evidence and was not influenced by the statements of counsel for the State with which we are presently concerned.

We have considered the questions argued in brief by counsel and find no justification for a reversal of the judgment of conviction. But, mindful of our duty in cases of this character, we have examined the record for any reversible error, whether argued or not, and conclude that counsel have presented in brief all matters worthy of separate treatment here.

Finding no error to reverse, the judgment will accordingly be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON, J., dissents.

LAWSON, Justice (dissenting).

I am in accord with the conclusions reached in the majority opinion in every respect except that I am of the opinion that the judgment should be reversed because of the improper argument of State's counsel.

The first statement made by the county solicitor with which we are concerned here was palpably improper. It was in part at least a statement of fact not in evidence, and as to which no evidence could have been introduced. It was a direct appeal to passion and not to reason. Its only tenden-

cy was to inflame the minds of the jury. Bridges v. State, 225 Ala. 81, 142 So. 56.

Likewise, the second statement of the county solicitor which is here under consideration was highly improper. It was a remark concerning which the solicitor could not possibly have any knowledge and in no event would that be a matter which could concern the jury. Johnson v. State, 242 Ala. 278, 5 So.2d 632; Birmingham Ry., Light & Power Co. v. Drennen, 175 Ala. 338, 57 So. 876.

This court has frequently condemned argument of counsel similar to that made by the circuit solicitor in the State's closing argument. Blue v. State, 246 Ala. 73, 19 So.2d 11; Johnson v. State, 246 Ala. 630, 22 So.2d 105, and cases cited.

It is apparent that the learned trial court in excluding these statements and in admonishing the jury to disregard them sought, as he did throughout the trial, to protect the rights of the defendant. And it is clear from the remarks of the trial court included in his judgment overruling the motion for new trial that he entertained the view that the prejudicial effect of the remarks was eradicated by his instructions to the jury.

In Johnson v. State, 242 Ala. 278, 5 So.2d 632, 636, this court did not reverse the judgment of conviction when the solicitor stated to the jury in argument that counsel for defendant "though doing all they could to acquit the defendant, yet down in their hearts they knew he deserved the death penalty", for the reason that the effect of such improper remarks was sufficiently removed by the trial court's rebuke to the solicitor and his admonishment to the jury to disregard the remarks. To like effect is the case of Norris v. State, 236 Ala. 281, 182 So. 69.

But here we have three statements made by counsel for the State in the course of argument to the jury, all of which, as we have shown, were improper.

In the first, reference is made to lynching, a practice which the solicitor indicated had been resorted to "in cases of this character," that is, in cases where a Negro is charged with raping a white woman.

In the next statement counsel, who had been appointed by the court to perform the solemn duty of representing a comparatively ignorant man who is without funds with which to employ counsel, are directly charged with the knowledge of the guilt of their client, who had just taken the stand and who, upon examination by his counsel, had professed his innocence in no uncertain terms.

In the other statement counsel for the State in effect calls to the attention of the jury the fully packed courtroom and asks them not to let down the persons present in the courtroom, as well as those in the community.

All of this in a case where a Negro man is on trial for his life before a jury of white men, charged with the commission of a crime of this character.

I am unwilling to say that the admonitions of the trial court to the jury, though clear and forceful, could eradicate from the minds of the jury the cumulative effect of the improper arguments of State's counsel.

This court has recognized the cumulative effect of improper arguments and reversed the judgment of conviction though the trial court had instructed the jury to disregard such improper statements. In Blue v. State, 246 Ala. 73, 19 So.2d 11, where the charge was not rape and the difference in races was not present, we said:

"In determining the question before the court, we do not think that each of the above statements must be analyzed separately to see whether or not, if standing alone, it would create an ineradicable bias or prejudice. We think, on the contrary, that these various statements should be considered together to determine whether or not, in their cumulative effect, they created a prejudicial atmosphere. It may be that some of the statements of the solicitor were replies in kind to statements made by counsel for the defendant, and we fully recognize, as said in Arant v. State, 232 Ala. 275, 167 So. 540, 544, 'a trial is a legal battle, a combat in a sense, and not a parlor social

affair.' The record shows that the presiding judge exercised great patience and in most of these incidents did what he could to disabuse as far as possible the minds of the jury of any prejudicial impression; but it is our duty to see to it that trials are free from prejudice and passion and that the courthouse means that where a conviction is obtained, it is obtained in an impartial atmosphere. The foregoing remarks were made in the presence of the jury. Considering them in their cumulative effect, we think that they were calculated to inject the poison of bias and prejudice into the minds of the jury. They created an atmosphere of bias and prejudice which no remarks by the court could eradicate. This is not justice and prejudicial error has been shown. Kabase v. State, 244 Ala. 182, 12 So.2d 766." 246 Ala. 79–80, 19 So.2d 16.

With full appreciation of the excellent manner in which the learned trial court conducted the course of the trial below and his efforts to protect the rights of the defendant, I am constrained to the conclusion that because of the improper and prejudicial arguments of counsel for the State, the judgment of conviction should be reversed.