160 So.2d 619

**Rodney Preston NICHOLS**

v.

**STATE of Alabama.**

**6 Div. 933.**

Supreme Court of Alabama

Jan. 16, 1964.

Rehearing Denied Feb. 20, 1964.

Beddow, Embry & Beddow, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Appellant killed his wife by stabbing her several times with a butcher knife. He was indicted for murder in the first degree and the verdict and sentence was murder in the second degree and sixty years in the penitentiary. A motion for a new trial was overruled and appellant appealed.

When arraigned in the circuit court, appellant pleaded not guilty and not guilty by reason of insanity.

The State proved the corpus delecti and cause of death by the deputy coroner. The mother of the deceased testified that her daughter was lying on the floor when she first saw her; that appellant was lying on the butcher knife and threatening to kill himself; that she took the knife away from him; that he said he killed his wife because he loved her and that he wanted to kill himself but the witness would not let him. The State rested after putting on these two witnesses.

Most of the defense witnesses testified in support of the plea of insanity and the defense rested without putting the defendant on the stand. Thereupon, the State, in rebuttal, called a stenographer as a witness to read the questions and answers that appellant had voluntarily given to the officers following his arrest on the same night that he killed his wife. Appellant objected vehemently and the arguments on this matter, mostly while the jury was excused, cover some sixteen transcript pages. The court ruled that the statement could be read and it is this ruling about which appellant concentrates his argument on appeal. He states in brief: "This Court will notice that all issues of appeal revolve around the admissibility of the appellant's alleged extrajudicial statement or confession."

Title 7, § 252, Code 1940, provides:

"The court may, at its discretion, at any time before the conclusion of the argument, when it appears to be necessary to the due administration of justice, allow a party to supply an omission in the testimony on such terms and under such limitations as the court may prescribe."

We have held that it is within the discretion of the trial court to receive, in rebuttal, testimony which more properly should have been offered as part of the case in chief. Blackwell v. State, 264 Ala. 553, 88 So.2d 347, and cases there cited. We do not think the trial court abused that discretion.

There is an additional reason for holding the evidence of appellant's voluntary confession admissible. It was not incumbent on the State to adduce evidence of the sanity of the defendant until he had presented evidence to support his plea of not guilty by reason of insanity. Several witnesses gave testimony in support of this plea and the State then had a right to present counter evidence in rebuttal.

Where insanity is relied upon as a defense, every act of the accused's life which throws some light on such issue is relevant thereto. Hall v. State, 248 Ala. 33, 26 So.2d 566, and cases there cited.

■ The issue of insanity gives much latitude, both to the defendant and the State, for the introduction of evidence of defendant's acts, declarations and conduct, prior and subsequent to the alleged crime, subject to the limitation that the acts, declarations and conduct inquired about must have a tendency to shed light on the accused's state of mind when the act for which he is being tried was committed. Hall v. State, 248 Ala. 33, 26 So.2d 566; Barbour v. State, 262 Ala. 297, 78 So.2d 328, and cases there cited; Annotation 8 A.L.R. 1219.

■ Here, the verbatim questions to, and answers of, the accused approximately three hours after he had killed his wife were admissible to shed light on the state of mind of the accused and were properly admitted under the plea of insanity. Authorities supra.

■ Merely because the extrajudicial declarations of the accused amount to confessions of the crime with which he is charged or of other crimes does not render them inadmissible when they shed light on the question of his sanity. Brothers v. State, 236 Ala. 448, 183 So. 433; Anderson v. State, 209 Ala. 36, 95 So. 171; People v. David, 12 Cal.2d 639, 86 P.2d 811; U. S. v. Chisholm, C.C.Ala., 153 F. 808.

Appellant's mother, a defense witness, had testified that a short time before deceased was killed that she, deceased, had said that she was going to get a divorce from appellant because he had been going around with a woman named Margaret Carmack. Appellant's brother had testified, on cross examination, in answer to a question if appellant was running around with Margaret Carmack—"He never run around with her."

A part of the questions and answers admitted in evidence read:

"Q. You and your wife have been having a little trouble about another woman you were supposed to be seeing?

"A. Yes, sir.

"Q. Have you been seeing her?

"A. Yes, sir.

"Q. How long have you been seeing her?

"A. About a few months.

"Q. This afternoon did you tell your wife you had been seeing this young lady?

"A. Yes, sir.

"Q. Well, just what was the argument between you and her about this girl?

"A. All I remember—she was sitting down on the couch, and said, 'Why did you do it for? I know you didn't love her.'

"Q. And she was talking about Margaret Carmack?

"A. Yes, sir.

"Q. Is that the girl your brother told her you were going with?

"A. He told her the first of the week sometime.

"Q. The first of the week—and then later—after he told her, is that when this trouble started?

"A. Yes, sir.

"Q. And you all had been having arguments about this since then?

"A. Well, she would mention it, and we would make up if that is what you mean.

"Q. But tonight you did have some argument about it?

"A. Yes, sir.

"Q. That was immediately before this trouble where she was murdered, is that true?

"A. Yes, sir."

Appellant argues that the court erred in admitting the statement into evidence be-

cause this part of it tended to impeach the testimony of appellant's brother. We cannot agree.

We have already shown that the statement or confession consisting of questions and answers was admissible. The confession was shown to have been voluntary, and the part quoted supra was interwoven into the remainder and so immediately connected with the cause of the slaying as to be necessary for a full understanding of the killing. The fact that one statement contradicted the testimony of appellant's brother was purely incidental and does not constitute reversible error. Sims v. State, 253 Ala. 666, 46 So.2d 564; Sims v. Struthers, 267 Ala. 80, 100 So.2d 23; Annotations, 2 A.L.R. 1017, 26 A.L.R. 541. We hold that there was no reversible error in the admission into evidence of the statement of the accused.

We have not concerned ourselves with some of the reasons given by the trial judge for admitting the statement. A correct ruling on evidence will be sustained, though placed on an incorrect ground. Lightman Bros. & Goldstein v. Epstein, 164 Ala. 660, 51 So. 164; 2A Ala.Dig., Appeal & Error ⊷854(4).

Under the issue of "not guilty by reason of insanity" and where evidence pro and con was introduced, a jury question was presented and the trial court correctly submitted the question to the jury. Anderson v. State, 209 Ala. 36, 95 So. 171; Aaron v. State, 271 Ala. 70, 122 So.2d 360.

Appellant argues that his motion for a mistrial should have been granted because of a remark of the trial judge. The stenographer, Mrs. Norman, had testified that she had taken the statement of appellant which has already been considered. Appellant objected to her qualifications. The trial court ascertained that counsel for both sides had copies of her transcription from her shorthand notes, so the court, after ruling that the statement was admissible, directed her to read from her original shorthand notes and the following transpired:

"THE COURT: I think if you (referring to the solicitor) sit and check her as she reads it, and Mr. Beddow checks her as she reads it, I think it would be pretty good evidence that she is capable of doing it, and that she did do it.

"MR. BEDDOW: If your Honor please,—

"THE COURT: Before he says anything, I'll withdraw that statement. Don't consider that, gentlemen."

Twice more within a page length of the transcript, the trial court stated that the jury was not to consider his remark about Mrs. Norman's ability.

The court recognized that his statement was improper but is was immediately withdrawn and the jury told not to consider it. In Phillips v. Beene, 16 Ala. 720, this court said and has quoted many times:

"It cannot be seriously contended that every expression of opinion by the court, during the progress of the trial, if erroneous, shall furnish ground for reversal. But such opinion must, in some manner, influence the result of the cause, or be supposed to do so, by being given in charge to the jury, or by a refusal to charge, or by being connected with the exclusion or admission of evidence."

The only question here is whether the remark was so ineradicable that its effect could not be cured by the court's proper instructions which were given three times. Our studied conclusion is that they were not of such a nature as to require the granting of a mistrial. Cosby v. State, 269 Ala. 501, 114 So.2d 250, and cases there cited.

While we agree that the remark was improper, we are not to be understood as intimating that it was so prejudicial that it would be grounds for reversal. See Gurley v. State, 216 Ala. 342, 113 So. 391; Finney

v. Long, 216 Ala. 628, 114 So. 200; Woodard v. State, 253 Ala. 259, 44 So.2d 241; Parker v. City of Birmingham, 36 Ala.App. 234, 56 So.2d 348; Peyton v. State, 40 Ala. App. 556, 120 So.2d 415, cert. denied 270 Ala. 740, 120 So.2d 429, cert. denied 364 U.S. 870, 81 S.Ct. 114, 5 L.Ed.2d 93.

Although not argued in brief, the record shows that the court committed reversible error during the cross-examination of the prosecution's second witness, the mother of the deceased:

"Q Now, Mrs. Logan, what is the state of your feelings toward this young man?

"MR. HAWKINS: We object to that as being incompetent, irrelevant and immaterial.

"THE COURT: Yes, I don't see how that would be material.

"MR. BEDDOW: Do you sustain the objection, your Honor?

"THE COURT: Yes, sir.

"MR. BEDDOW: We except."

■ It is always permissible to cross-examine a witness to ascertain his interest, bias, prejudice or partiality concerning the matters about which he is testifying. Southern Electric Generating Co. v. Lance, 269 Ala. 25, 110 So.2d 627; Alabama Power Co. v. Gladden, 237 Ala. 527, 187 So. 711; Green v. State, 258 Ala. 471, 64 So.2d 84; Pelham v. State, 22 Ala. App. 529, 117 So. 497. The rule is also stated that, generally, anything which tends to show bias, unfriendliness, enmity, or inclines a witness to swear against a party, is admissible. Louisville & Nashville R. Co. v. Martin, 240 Ala. 124, 198 So. 141; Sowell v. State, 30 Ala.App. 18, 199 So. 900; Blackshear v. State, 33 Ala.App. 576, 36 So.2d 244.

■ Ordinarily, the proper way to show bias on the part of a witness is to ask him directly the state of his feelings, and if he denies bias, or says his state of feeling is good, then resort may be had to facts tending to show otherwise. Meador v. State, 37 Ala.App. 573, 72 So.2d 418, and cases there cited. However, as pointed out in Louisville & Nashville R. Co. v. Martin, 240 Ala. 124, 198 So. 141, our cases do not require in every case, as a condition precedent as to any question on cross-examination to show bias, that the witness must first be asked about the state of his feelings. But in the instant case, the proper question to lay the predicate was asked, and the trial court incorrectly sustained objection to it.

In Green v. State, 258 Ala. 471, 64 So.2d 84, we reaffirmed the proposition that:

"As affecting credibility, it is permissible, on cross-examination, to inquire of a witness concerning his relations to the parties, or to the subject-matter of controversy, or as to the feelings of sympathy, or partiality, or hostility which he may entertain, or may have expressed towards the party introducing him, or against whom he is introduced."

In that case, we reversed because the trial court did not allow evidence showing the witnesses' feelings toward the defendant as shedding light on their credibility.

Other examples where objections to questions were sustained and held by our courts to be reversible error are:

(1) "Is it not a fact that you and Sanford (defendant) are unfriendly on account of a whiskey bill that you owe him?" Sanford v. State, 143 Ala. 78, 39 So. 370.

(2) "You fell out with this man (defendant) and his whole family after you were arrested for having a still?" Ex parte Morrow, 210 Ala. 63, 97 So. 108.

(3) A prosecution witness in a charge of assault and battery upon a Dr. Roberts was asked "if he and Dr. Roberts were lifelong friends." Byrd v. State, 17 Ala.App. 301, 84 So. 777.

In Craven v. State, 22 Ala.App. 39, 111 So. 767, the Court of Appeals said:

"The state witnesses Mrs. J. T. Underwood, Mrs. Claude Lawler, and Effie

Stutz gave testimony adverse to defendant, and on cross-examination the defendant undertook to how their bias, hostility, and ill will toward him. This the court would not allow, and in so ruling committed reversible error. * * * "

In Russell v. State, 19 Ala.App. 425, 97 So. 845, it was held that the feelings and relations of a witness toward the parties is never a collateral issue, and testimony bearing thereon is always relevant. It was further held that the court erred in sustaining the objection to the question—"You are not friendly to the man, the defendant George Russell?" Even though this error was cured by an answer immediately following the ruling, "I have a very kindly feeling toward him," the court erred to reversal when it refused to permit any questions to test "the sincerity and bona fides of the statement by the witness as to her friendly feelings toward the defendant."

In Lodge v. State, 122 Ala. 97, 26 So. 210, the prosecuting witness, Otto Gordon, was fourteen years of age and, on cross-examination, the defendant sought to prove by Otto ill will and a state of bad feeling on the part of both of his parents toward the defendant. The court said, "This evidence should have been allowed, and the court erred in sustaining the solicitor's objection," and the judgment was reversed. The Lodge case was followed in Bennefield v. State, 134 Ala. 157, 32 So. 717, and both cases were followed in Peinhardt v. State, 37 Ala.App. 693, 76 So.2d 176.

In the instant case, the court sustained the objection to the proper, preliminary question, "What is the state of your feelings toward this young man?" and thereby cut off any inquiry as to the possible bias, prejudice or partiality of the witness. For this error, the judgment must be reversed.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.