McMILLAN, Judge.
The appellant, Jerome Carr, was indicted for attempted murder and pleaded not guilty and not guilty by reason of insanity. Following the return of a guilty verdict by the jury, he was sentenced to 15 years’ imprisonment.
*817 The appellant argues that the evidence could not support his conviction, because his defense of not guilty by reason of insanity was proven by a preponderance of the evidence.
The record indicates that on the date of the offense, the appellant drove his wife to work and thereafter went to a park with a friend, who purchased a gallon of mushroom tea. The appellant indicated to the physicians at Taylor Hardin Medical Facility that the tea also contained alcohol. He had also taken three pain pills that were prescribed for him following an automobile accident. He entered his step-daughter’s bedroom after he returned home and began rubbing her head. When she awoke, the appellant informed her that he intended to commit suicide, but before doing so he wished to have sexual intercourse with her. She attempted to leave the house, and the appellant grabbed her and dragged her to the back bedroom. He telephoned a neighbor, Valerie White, and told her that his step-daughter was upset because she had just had a nightmare. The step-daughter began screaming in the background and Valerie White then walked over to the appellant’s house. The appellant attempted to drag Valerie White into the house. As they were fighting on the porch, the appellant hit Valerie White in the head with a gun, knocked her down the steps, and shot into the ground beside her. The victim ran into the house in order to telephone for help, and she locked the door behind her. The appellant knocked down the door and fired a shot through the window. He then grabbed the telephone receiver from his step-daughter and hit her in the head with the gun. He then left his house in order to look around the neighborhood for Valerie White. The step-daughter then ran to Mrs. Ocie Hines’s house in order to hide. Valerie White had run to the house of another neighbor, Katherine Wilson, and she and Wilson then went to Ocie Hines’s house to hide. The appellant then entered Ocie Hines’s house and stated that if he were going to kill anyone he would kill himself, whereupon he placed the gun to his head. Katherine Wilson attempted to persuade the appellant to give her the gun. The police then arrived, instructed the appellant to drop his gun and to lie on the ground. The appellant cooperated. One of the officers testified that the appellant smelled strongly of alcohol.
Witnesses testified that the appellant was normally a very friendly and peaceful man and that he did not appear to be insane during the incident, but rather appeared mad or angry.
The record further indicates that the appellant was sent to Taylor Hardin Medical Facility for a determination of competency for trial and an evaluation of the possibility that the appellant was insane when he committed the offense. The appellant was found to be competent for trial in that, although the doctors noted that he had experienced a “decreased verbal output,” he was “fully oriented and ... evidencefd] basic knowledge of his legal status, the legal process and plea options.” The report noted as to the evaluation concerning the appellant’s sanity at the time of the offense, that the appellant remembered consuming two large glasses of the “mushroom tea,” which contained chemicals “that have the potential of producing a hallucinogenic effect as well as containing alcohol.” The appellant further indicated that he began “feeling ‘high’ ” and could barely see. He stated that although he recalled hearing his step-daughter’s voice, he could not remember anything else or being involved in any wrongdoing. The report concluded, “Based on Mr. Carr’s statements, it appears that he may well have been in a state of drug-induced intoxication (possibly with accompanying hallucinations) during the time period in question. The record indicates that such a state might impact negatively on subsequent memory for activity while in that state. However, the Alabama Code precludes a state of voluntary intoxication as grounds for an insanity defense.” Thus, the examiners found that, although it appeared that the appellant was in a state of drug-induced intoxication, “the available information” did not allow the examiner “to make a confident statement that Mr. Carr was suffering from a major mental *818 disorder at the time of the alleged offenses.”
The defense presented the testimony of Katheryn M. Hess, a therapist with East Alabama Comprehensive Mental Health Center. Hess testified that while the appellant was incarcerated she was called to observe him and to help develop some treatment plans for him. She testified that the appellant displayed psychomotor retardation, which is a slowness of movement and slowness of thought. The appellant was diagnosed as a paranoid schizophrenic.
Chester Wright Jenkins, a psychiatrist practicing in Opelika, testified that he had not had the opportunity to observe the appellant, but he reviewed the appellant’s records from Taylor Hardin Medical Facility and those from East Alabama Comprehensive Mental Health Center. Jenkins testified that although he had never physically examined the appellant, he felt that the appellant’s medical history suggested that he suffered from substantial mental difficulties. Jenkins testified that the appellant’s criminal responsibility could have been affected if the appellant “were seriously involved with either an intoxication or a psychosis which had been precipitated by a longterm intoxication.”
“Although the presumption of sanity can be overcome or rebutted, the accused is not entitled to a directed verdict on the issue of insanity unless the evidence of insanity is clear, strong and undisputed.” Cunningham v. State, 426 So.2d 484, 486 (Ala.Cr.App.1982).
“When the accused has offered evidence sufficient to overcome the presumption of sanity, the State is not required to prove his sanity. Howard v. State, 172 Ala. 402, 408, 55 So. 255 (1911). Insanity is an affirmative defense which must be proven by the defendant to the reasonable satisfaction of the jury. The burden of proving insanity never shifts to the State but remains on the defendant throughout the trial. Grammer v. State, 239 Ala. 633, 196 So. 268 (1940). ‘[A] reasonable doubt of sanity, raised by all the evidence, does not authorize an acquittal.’ Bozwell [v. State], 63 Ala. 307, 326 (1880).”
Cunningham v. State, supra at 490.
Where conflicting evidence is presented on the issue of insanity, the issue should be submitted to the jury. Nichols v. State, 276 Ala. 209, 213, 160 So.2d 619 (1964). Thus, the decision to reject an insanity defense was affirmed by this court where “[tjhere was evidence that appellant did suffer from a mental abnormality.” Westbrooks v. State, 492 So.2d 1023, 1024 (Ala.Cr.App.1984). This court noted that there was also a substantial amount of evidence from which the jury could have reasonably concluded that the appellant was sane at the time of the offense. Further this court noted that expert testimony is not conclusive on the jury and may be rejected even though it is without conflict. Westbrooks v. State, supra, at 1025; Cunningham v. State, supra, at 489; Christian v. State, 351 So.2d 623, 624 (Ala.1977). The jury, in weighing the probative value of the expert testimony in this case, was entitled to consider the testimony that Dr. Chester Jenkins never observed or examined the appellant and that Katheryn Hess only had contact with the appellant on two short occasions. Cunningham v. State, supra (the jury was entitled to consider the fact that the psychologist interviewed the appellant for a 45-minute period four months following the offense).
“Unusual or weird behavior alone cannot not be equated with mental insanity. Carey v. State, 361 So.2d 1176, 1179 (Ala.Cr.App.1978). Evidence that the accused had sometimes acted a little ‘peculiar’ or testimony that ‘he was not normal,’ ‘that he was not in his right mind,’ ‘looked like he was insane,’ or did not act ‘right’ is not sufficient, in and of itself, to meet the test laid down by case law for establishing an insanity defense. Weeks v. State, 342 So.2d 1335 (Ala.Cr.App.1977). Also Gibson v. State, 49 Ala.App. 18, 268 So.2d 49 (1972) (nervous, unable to sleep, anger without cause, easily influenced); Lee v. State, 43 Ala.App. 400, 191 So.2d 239 (1966) (suicide attempts). The workings of a diseased mind are so variant that no rule as to the sufficiency *819 of the evidence to prove insanity can be laid down in all cases, but each must depend more or less upon its own particular facts. Boswell v. State, 63 Ala. 307 (1880).”
Meredith v. State, 370 So.2d 1075, 1078 (Ala.Cr.App.), writ denied, 370 So.2d 1079 (Ala.1979).
Moreover, there was evidence that the appellant drank two large glasses of mushroom tea mixed with alcohol and had taken three pain killers prior to committing the offense. According to § 13A-3-2(d), Code of Alabama (1975), “Intoxication in itself does not constitute mental disease or defect within the meaning of section 13A-3-1.” “ ‘[I]nsane conduct or mania resulting merely from present intoxication is not the insanity which excuses crime.’ James v. State, 193 Ala. 55, 69 So. 569, 572 (1915). ‘Temporary insanity which arises from present voluntary intoxication is no defense to a criminal charge....’” Lister v. State, 437 So.2d 622, 624 (Ala.Cr.App.1983).
The issue of whether the appellant was sane or insane at the time of the offense was a question for the jury to decide. Evidence was presented that could have supported a reasonable inference that the attempted murder was committed by a man that the law would define as sane. “After consideration of all the testimony in this case, we do not find that the evidence of insanity was both overwhelming and un-contradicted.” Magwood v. State, 426 So.2d 918, 923 (Ala.Cr.App.1982), aff’d, Ex parte Magwood, 426 So.2d 929 (Ala), cert. denied, Magwood v. Alabama, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983).
AFFIRMED.
All the Judges concur.